CHARLES H. STONE *vs.* WALTER W. NORRIS.

JULY 5, 1917.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Elections.   Taxation.*

A tax for personal property is not illegally assessed because the personal property, tangible or intangible, for which it was assessed, was not described on the assessment roll, and hence a person so assessed who has paid the tax is not disqualified to vote in the election of members of a city council, under the provisions of Cons. R. I. Art. II, § 2.

*(2)   Elections.   Taxation.   Illegal Assessment.*

*Quaere:* If a person who has paid a tax assessed upon his property valued in the assessment in excess of $134 is not qualified as a voter, regardless of any irregularity or illegality in the assessment of the tax.

*(3)   Quo Warranto.*

Whether a petition in equity in the nature of *quo warranto* brought by one not a claimant to the office of councilman, although a candidate at the election, for the purpose of having the election of respondent declared null and void, should have been brought in the name of the attorney-general, is not decided.

PETITION IN EQUITY in nature of *quo warranto.* Heard and dismissed.

BAKER, J.   Charles H. Stone, of the city of Cranston, in this State, by this his petition in equity in the nature of *quo warranto* filed under the provisions of Chapter 328 of the General Laws, brings in question the title of the respondent, Walter W. Norris, to the office of Third Councilman of the Fourth Ward of said city for the term of two years commencing the first Monday in January, 1917.  The petition alleges that said respondent and himself were opposing candidates for the office of Third Councilman from said Fourth Ward at the election held November 7, 1916; that on the following day the city council of said city in accordance with law, counted the ballots cast in said election for said office and declared the result

of such election to be that the respondent had been elected over the petitioner by a plurality of one hundred and fourteen votes; that thereafter the said Walter W. Norris on the first Monday of January, 1917, was duly sworn and engaged as incumbent of said office of councilman, and now holds the same. The petition further alleges that the names of a number of persons participating in said election, not qualified so to do and sufficient to determine the result of said election, " were placed upon the tax rolls of said city by the Assessors of Taxes of said city without any description of the several properties of said persons respectively possessed or claimed to be possessed " by them. By the bill of particulars subsequently furnished by the petitioner the names of one hundred and twenty-four persons assessed as aforesaid are given as participating in the election of Third Councilman for said Fourth Ward on November 7th last. The petition also alleges that " said pretended assessment is in violation of Section 2 of Article II of the Constitution of the State of Rhode Island " which provides that " no person shall at any time be allowed to vote in the election of the city council of any city or upon any proposition to impose a tax or for the expenditure of money in any town or city, unless he shall within the year next preceding have paid a tax assessed upon his property therein valued at least at one hundred and thirty-four dollars." It appears by evidence or admissions that these one hundred and twenty-four persons were assessed in 1916 by the tax assessors of Cranston for either " personal estate " or " personal property " in varying amounts from $195 to $6,000, the most of them for tangible personal property only, a few for intangible personal property only, and one for both kinds, and that all of them duly paid the taxes assessed against them. The petitioner's claim is that the words "tax assessed" in Section 2 of Article II of the State Constitution means a tax *legally* assessed and that as the tax

rolls of Cranston " did not contain any description, or even mention, of the personal property for the payment of a tax upon which any such person claimed the right to vote " the assessment as to all of them was illegal, and (1) as a consequence they were not legally entitled to vote; that as the number of such voters exceed the plurality declared to have been received by the respondent, and inasmuch as it is not possible to determine and prove who was chosen councilman by the admittedly legally qualified voters at said election, he prays this court to declare said election to be null and void and to order a new election for said office of Third Councilman.

The respondent has moved the dismissal of the petition on various grounds which we do not deem it necessary to now set out.

The petitioner does not question in any way the acts of the board of canvassers or the acts of the tax assessors other than the one already stated, or the qualifications of the one hundred and twenty-four as voters, except as they may be affected by the alleged illegality of the assessment. There are, therefore, but two questions to be considered, first: Were the assessments illegal for lack of description of the personal property? and, if illegal, were these one hundred and twenty-four persons after having severally paid a tax assessed upon their property in Cranston valued in the assessment in excess of one hundred and thirty-four dollars in each instance, disqualified as voters at such election?

If we consider the second question first, assuming for the time being that the assessments were illegal, it is by no means clear that these persons were disqualified as voters. The requirements of property ownership as a qualification for voting, once so common, have been almost entirely abandoned. If there be precedents on the point, they must be sought in the early decisions, and we find some authority on this question. Article 3 of the Amend-

ments to the Constitution of Massachusetts provided that
" Every male person of twenty-one years of age and up-
wards (excepting paupers and persons under guardian-
ship) who shall have resided within the Commonwealth
one year . . . and who shall have paid . . . any
state or county tax which shall, within two years next pre-
ceding any . . . election " (for general State
offices) " have been assessed upon him in any town or
district of this Commonwealth . . . shall have the
right to vote in such election . . . ; and no other per-
son shall be entitled to vote in such elections." The
House of Representatives submitted a question to the Su-
preme Judicial Court as to the right to vote under said
Article 3 of a person upon whom a poll tax had been as-
sessed " after the annual assessment of taxes." The
opinion of the court in reply appears in 18 Pickering 575.
On page 578 the court said: " We beg leave not to be
understood as intending to suggest, that to qualify one to
vote, within the provisions of the constitution, it must
appear that the tax which he has paid is in all respects a
legal tax, or that it is competent to go behind the actual
payment of a tax, to inquire whether there has or has not
been any irregularity or illegality in the levying or assess-
ment of the taxes. This is a point which the person claim-
ing the right to vote is not bound to inquire into, and in
most cases cannot know. It is sufficient that he has paid
a tax *de facto* levied and assessed upon him." Later in
*Humphrey* v. *Kingman,* 5 Met, 162, 166, where the qualifi-
cation of a voter was in question, the court said, " It is
not the mere payment of money that qualifies a man to
become a voter, but the money paid must be for the dis-
charge of a tax actually assessed upon him, whether
legally or illegally."

But were the assessments against these one hundred
and twenty-four persons illegal because the personal
property was not described? The petitioner has cited

authorities and decisions in other jurisdictions holding that such an assessment is invalid. But the statutes of different states differ much in their requirements in respect to the levy and assessment of taxes, and it is only where such statutes are substantially like our own that decisions in other jurisdictions have persuasiveness as authorities. The requirements of our own statutes as applied to the admitted facts are to determine the legality or illegality of these assessments. Chapter 58 of the General Laws prescribes the method of assessing taxes. Section 4 imposes the duty upon the assessors of assessing and apportioning " any tax on the inhabitants of the town and the ratable property therein " as ordered by the town. Section 6 relates to the giving of notice of the time and place of making the assessment, providing that such notice " shall require every person and body-corporate liable to taxation to bring in to the assessors a true and exact account of all his ratable estate, describing and specifying the value of every parcel of his real and personal estate, at such times as they may prescribe."

Section 7 is as follows: " Every person bringing in any such account shall make oath before some one of the assessors that the account by him exhibited contains to the best of his knowledge and belief a true and full account and valuation of all his ratable estate; and whoever neglects or refuses to bring in such account, if over-taxed shall have no remedy therefor."

Section 8, as amended by Sec. 43 of Chap. 769 of the Public Laws of 1912 is as follows: " The assessors shall make a list containing the true, full and fair cash value of all the ratable estate in the town, placing land, buildings and other improvements, tangible personal property, and intangible personal property, in separate columns, and distinguishing those who give in an account from those who do not, and shall apportion the tax accordingly."

Section 4 of Chap. 57 of the General Laws provides

31

that, " Taxes on real estate shall be assessed to the owners, and separate tracts or parcels shall be separately described and valued as far as practicable." Chapter 57 has numerous provisions as to the place in which and the persons to whom personal property of different kinds shall be taxed, but there is no statutory provision similar to the one relating to real estate requiring a separate description and valuation of personal property.

It is true that as to certain corporations, which under the statutes are exempt from taxation for personal property except certain kinds thereof as named in the statute, this court, from the necessities of the case in order to avoid double taxation, has held that the assessment roll should show that such corporation had been assessed only for such kind of personal property as it was taxable for under the statute. *Dunnell Mfg. Co.* v. *Newell,* 15 R. I. 233; *Rumford Chemical Works* v. *Ray,* 19 R. I. 302; *Newport Reading Room and Higbee, Petitioners,* 21 R. I. 440. Such cases are special in character and application. The provision of our statute requiring " every person and body-corporate liable to taxation to bring in a true and exact account of his ratable estate, describing and specifying the value of every parcel of his real and personal estate " is merely directory as when there is default in bringing in such account the assessors are clothed with no authority to summon in such delinquents and compel disclosure, as is the case in some States. In such case it is the right and duty of the assessors to proceed to ascertain the nature and extent of such persons' taxable property from the sources of information at their command and to place a valuation upon it according to their best judgment.    37 Cyc. 995.    They have the means of obtaining definite information as to the ownership of real estate by examining the land records, and of ascertaining its approximate value in the market, and accordingly the requirements of Sec. 4, Chap. 57, *supra,* as to separate de-

scriptions and valuations of separate tracts or parcels of real estate are practicable and reasonable. But it is a practical impossibility for assessors to correctly ascertain the extent, character and particulars of an individual's ownership of personal property when he brings in no account thereof. And to require them to particularly describe such personal estate in the assessment roll, without first clothing them with power to ascertain of what it consists, would be unreasonable and futile. Our statute does not require it. Chapter 58 offers the inducement to bring in a sworn account of taxable property by providing for such persons as do so a remedy for overtaxation. At the same time it provides as a penalty or disadvantage for the one refusing or neglecting to bring in an account in that he is without remedy if overtaxed. *Coventry Co.* v. *Assessors of Taxes,* 16 R. I. 240; *Tripp* v. *Torrey,* 17 R. I. 359. There is remedy for such person for illegal taxation only, as when he has *no* ratable or taxable estate. *Hall* v. *Bain,* 18 R. I. 413, is a case of illegal taxation, although in that case the plaintiff had brought in an account. See also *Newport Reading Room and Higbee, supra.*

In the case of a person having taxable personal estate and rendering no account to the assessors it could be of no possible advantage to him to specify and describe on the assessment roll the property on which he is assessed as he is without remedy in any event.

The law as to assessment of taxes in Massachusetts in its main features is similar to our own, although it requires specification on the assessment roll of certain kinds of personal estate. In *Noyes* v. *Hale,* 137 Mass. 266, on page 270, the court said: "If a person who is liable to be taxed in a town for personal property does not bring in a list of such property to the assessors, as provided by law, it is their duty to ascertain, as nearly as possible, the particulars thereof, and to ' make an estimate thereof

at its just value, according to their best information and belief.' Gen. Sts., c. 11, § 27; Pub. Sts., c. 11, § 41. If they are unable to ascertain the particular kinds or items of such taxable personal property, an estimate of it may be made as ' personal property,' without any enumeration of particulars. This practice, we believe, prevails widely; and indeed it appears to be necessary, in view of the manner in which much taxable personal property is now commonly held, of the ease and frequency with which it is transferred, and of the practical impossibility of ascertaining correctly the particulars of an individual's investments and property without as well as within the State on any given day. Such appears to have been the method which was sanctioned in *Bates* v. *Boston,* 5 Cush. 93, and a similar method in respect to real estate was approved in *Tobey* v. *Wareham,* 2 Allen, 594. The requirement of the Pub. Sts., c. 11, § 43, that the assessors shall specify the amount of each of several classes of taxable personal property, namely, money at interest and other debts due, money on hand including deposits, public stocks, and securities, and stocks in corporations without the State, did not exist until 1879. It was adopted chiefly for statistical purposes; it of course extends only to so much of the enumerated classes as the assessors may be able to ascertain; it does not include all taxable kinds of personal property; and a compliance with it is not essential to the validity of a tax. See *Sprague* v. *Bailey,* 19 Pick. 436, 441; *Lincoln* v. *Worcester,* 8 Cush. 55, 63. The existence of that requirement by no means precludes assessors from assessing a tax upon ' personal property,' when they are unable to ascertain the items of which such personal property is composed.''

See also *Lamson Consolidated, &c., Co.* v. *Boston,* 170 Mass. 354.

We are of the opinion, therefore, that the taxes assessed against the one hundred and twenty-four persons named

were not illegally assessed because the personal property, tangible or intangible, for which they respectively were assessed, was not described on the assessment roll.

(3)    One of the grounds of the motion to dismiss is that the petition should have been brought in the name of the Attorney General, as the petitioner is not a claimant of the office of councilman, and in his brief the defendant cites *Ney* v. *Whiteley*, 26 R. I. 464, on that point. Without deciding the point, we have thought it proper to consider the questions presented by the petition and to express our opinion thereon, as from its allegations it seems apparent that the same question could be raised as to several other persons in Cranston declared to have been elected to other offices in that city in the election held November 7th last.

The petition is denied and dismissed.

*Edward M. Sullivan, Francis E. Sullivan, John J. Sullivan*, for petitioner.

*Frank H. Wildes*, for respondent.