EDWIN R. BAXTER *vs.* LINCOLN MILLS COMPANY.

FEBRUARY 18, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. In this action in assumpsit, which was heard in the superior court by a justice thereof sitting without a jury, the plaintiff, after a decision in his favor for $1837.15, prosecuted a bill of exceptions. His main exception is that the damages awarded were inadequate.

The plaintiff, doing business as Edwin R. Baxter & Son, is a selling agent of textile goods with a place of business in Boston, Massachusetts. His son, Charles E. Baxter, here-

inafter referred to as Baxter, is associated with him in business and admittedly represented him in the transaction which is in dispute in this case. The defendant corporation, the entire stock of which is owned by Cyril W. Knibb, its president and treasurer, operates a mill in Pascoag in this state. Clarence W. Smith is defendant's superintendent and in charge at the mill.

The basic question in this case relates back to an oral agreement which was entered into between the plaintiff and Knibb at Boston in July 1940, whereby the former was engaged as selling agent for the defendant at a commission of 5% of the price for which goods were sold in territory which is in dispute. In February and March 1941 the plaintiff, acting through Baxter, secured for the defendant from Montgomery Ward Company of New York, hereinafter called the Ward Company for convenience, an order for 68,154 yards of goods, which were duly delivered and paid for.

This case was tried by the plaintiff in the superior court on the theory that, acting under the contract just identified, he was entitled to a commission of 5% on the Ward Company order, or $3731.43. That the plaintiff was entitled to such commission on said order under that contract was denied by the defendant, on the ground that the plaintiff's agency was limited by the contract to the New England states. It contended that the sale to the Ward Company was the subject of a special agreement, whereby the plaintiff agreed to accept a commission of 2c per yard on the goods sold. The trial justice found that there was such special agreement and rendered his decision accordingly. The amount of $1837.15 fixed by him in his decision includes allowances for certain minor items and interest.

The first important controverted fact in issue was whether there was a territorial restriction in the selling agreement of July 1940 between the plaintiff and the defendant. This issue was tried at great length by the parties in the superior court, with the result that the evidence in reference thereto

is in hopeless conflict. The credibility of the witnesses therefore became of prime importance. We make the same comment at this point as to the highly conflicting and irreconcilable evidence respecting the Ward Company's order, which we will consider later in this opinion.

Baxter and Smith were present when the original selling agreement was made. The testimony of these witnesses was as conflicting as that of the plaintiff and of Knibb on the question of territorial restriction. The plaintiff and Baxter testified that the agreement was subject to no such restriction, while Knibb and Smith testified that the agreement limited plaintiff's agency to the New England states. But there were other circumstances in evidence which affected the credibility of the respective witnesses on this point, among which were the following:

In a letter to Knibb, dated October 26, 1940, the plaintiff, after referring to matters unconnected with the instant case, says: "We understand that we are to continue selling in the New England market as before, and if you will have Mr. Smith rush out ends or sample pieces . . . feel sure we can get you plenty of business." The plaintiff made no explanation of what he meant by his reference, as to the New England market in this letter.

In February 1941, J. G. Buss, the buyer of textile goods for the Ward Company, was interviewed in New York by Baxter concerning the sale involved in this case. The evidence shows that both Buss and Baxter knew that the defendant had a selling agent in New York. Buss testified by deposition as a witness for the plaintiff. In the course of his direct testimony, he was asked the following question: "Do you have any knowledge as to what Mr. Baxter's arrangements with Mr. Knibb were?" His answer was: "No, except that I know they were probably sub rosa, because in coming to New York he was out of his territory. He explained that in New York to me. As a matter of fact, at that time, he showed great concern in regard to the Peerless Woolen Mills." Baxter's comment on this testimony

was to the effect that, as Buss was well acquainted with the sales manager of the Peerless Woolen Mills and as that company, a competitor of the defendant, was also represented by the plaintiff, Baxter did not want that company to know that the plaintiff was selling defendant's product to Buss in New York.

However, in cross-examination Buss gave the following testimony as to this first meeting between Baxter and him in New York: "Q. And at that time was there any talk between you and Mr. Baxter as to his relation with Lincoln Mills as a selling agent? A. He told me that he was their representative in New England and not in New York." This testimony was not directly contradicted or explained by Baxter.

Without further amplification of the conflicting testimony on the question of territorial restriction, we will now summarize the most important points in the equally conflicting testimony concerning the Ward Company's order. Baxter testified that, before talking to Buss in New York early in February 1941, he saw defendant's superintendent, Smith, at the mill in Pascoag and asked him if the mill could handle big orders if he, Baxter, was able to procure them in New York; that upon receiving an affirmative answer to this question, he went to New York and interested Buss in the purchase of one thousand pieces of defendant's goods, which were then selling at $1.12½ a yard; that he thereupon telephoned to the mill and arranged with Knibb, who happened to be there, for a meeting on that same day at the latter's office in Providence; that he and Buss accordingly came to Providence by plane and met Knibb as agreed; and that he, Baxter, was present throughout this meeting.

The testimony of Knibb clearly conflicts with that of Baxter concerning this meeting, while that of Buss is open to different interpretations. Knibb testified that at the very outset of the meeting he told Buss that Baxter had no authority to represent him or the mill in New York; that, as a result of the conversation which followed, Knibb con-

ditionally agreed that the defendant would manufacture the goods at $1.07½ a yard "net to the mill", and that any expense of Baxter, Buss "would have to arrange."

Baxter testified that after introducing Buss to Knibb he "didn't do much talking from then on"; that when Buss suggested that he felt entitled to an "inside price" on the quoted price of $1.12½ a yard because of the size of the order, which was for cash on delivery, Knibb "immediately replied that he would give him the fabric for $1.07½." Baxter denied that the price of $1.07½ was to be "net to the mill", and further testified that nothing was ever told him by anyone about Buss having to take care of his commission on this order.

Buss testified that at that meeting Knibb agreed to sell the goods at $1.07½ net to Knibb as "no factoring or financing" charges were involved in the transaction; and that he did not recall Knibb saying anything about commission "as such" because he, Buss, never paid any attention to the commission between a mill and its selling agent.

Sometime in March 1941 Buss arranged with Knibb to meet him at the Providence airport in Hillsgrove. On the appointed day, Buss first went to the mill in Pascoag, where he met Baxter, and after a conference with Smith, defendant's superintendent, about certain technical details, the three men and one Julius Weil, went to the airport to meet Knibb. Weil, who was indirectly interested in the Ward Company's contract, testified for the defendant on an issue in the case which is not now before us. Generally speaking, his testimony, which was substantially corroborated by Buss, is in direct conflict with the testimony of Baxter on that issue. In so far as the instant case is concerned, Weil's testimony added a circumstance to be considered only on the question of credibility.

The evidence clearly shows that at the airport meeting the price for the Ward Company's order was raised by Buss from $1.07½ to $1.09½ a yard, which was agreeable to Knibb under the circumstances, thereby definitely closing

the contract. Knibb testified that at this meeting he said to Buss in Baxter's presence and hearing: "You know the basis of this sale, $1.07½. I don't want a lawsuit on my hands with Baxter. What are you going to do about him?" and that Buss replied: "I will give you 2c a yard to take care of Baxter." Although Knibb testified that he did not directly inform Baxter of his agreement with Buss, Smith positively testified that he heard Knibb say to Baxter: "We have made arrangements on this Montgomery Ward order to deliver the goods at a price of $1.09½, which includes 2c a yard for your commission", and that Baxter said nothing in reply.

Buss's testimony in connection with the airport meeting is somewhat indefinite. The substance of such testimony is that when he and Knibb were discussing the matter of price, Baxter was "wandering around"; that he, Buss, was the one who raised the price to $1.09½ a yard; that this raise was not made to take care of any factoring or financing charges, as the sale was for cash upon delivery of the goods subject to examination; and that he could not recall why the price was thus raised.

Baxter's testimony in effect is that, although he drove Buss to the airport, he did not know why Buss was to meet Knibb at that place; that he took no part in their conversation, nor did he hear what subject they were discussing or any particulars thereof; that he was not told by Knibb or anyone else that the price of the goods was raised to $1.09½ to take care of plaintiff's commission on the Ward Company's order; and that he left the airport in entire ignorance of what had there transpired between Buss and Knibb in reference to that order. He further testified that he first learned of defendant's claim that the Ward Company's order carried a commission of only 2c a yard from defendant's letter to the plaintiff of April 16, 1941.

The rescript of the trial justice reviews the evidence and makes certain findings of fact, the most important of which are the following: That by the oral agreement of July 1940

plaintiff's agency to sell defendant's goods was restricted to New England; that Baxter heard substantially all of the conversation between Buss and Knibb at the airport meeting and understood the purpose and subject-matter thereof; that, although the policy of the Ward Company was not to pay commissions, at least not directly, Buss increased the price for defendant's goods so that it would include plaintiff's commission; that Knibb then and there fully informed Baxter that the increase of 2c a yard in the price of the goods was to take care of plaintiff's commission on that order; that Baxter made no comment or objection to this statement; and that by "his acts and conduct from first to last" Baxter "acquiesced in and impliedly assented to establishing the rate or basis of his commission at 2c per yard" and agreed to accept the same. The trial justice concluded that all of these facts "made possible and resulted directly in the conversion of the tentative sale from defendant to Ward Company into an absolute one."

The plaintiff, in substance, contends that the trial justice misconceived or overlooked material evidence in the case and that therefore his findings of fact are not entitled to the weight that such findings are accorded in this court under our well-established rule. The plaintiff now argues that the finding of the trial justice on the question of territorial restriction is entirely immaterial in this case, notwithstanding the fact that in the superior court this issue was then treated by the plaintiff as of great importance. He justifies this apparent change of position on the ground that even if there were a territorial restriction in his original contract with the defendant, the restriction did not affect the Ward Company's order, as such restriction was waived by Smith, defendant's superintendent, when he told Baxter that the mill could handle large orders if Baxter obtained them in New York.

We cannot agree with the plaintiff on this point. The evidence is clear that Smith was not an officer of the defendant corporation, nor was any authority otherwise delegated

to him to bind the defendant in its contractual relations. His authority, as superintendent, was confined to the management of defendant's mill in Pascoag. We find nothing in the evidence upon which to base plaintiff's above-mentioned claim of waiver.

The remainder of plaintiff's argument is based on a view of the testimony most favorable to himself. In some instances, he takes from the rescript an excerpt or a statement of the evidence and argues that such excerpt or statement is contradicted by testimony which the trial justice did not mention; and in other instances, he complains that the trial justice gives undue weight to testimony adverse to him.

The weakness in plaintiff's argument is that he misconceives the real basis upon which the trial justice rests his decision. The evidence being sharply conflicting and irreconcilable, the trial justice had to pass upon the credibility of the various witnesses in order to arrive at a decision on the determinative questions in the case. His consideration of the evidence led him to the conclusions that the testimony of the principals was in "hopeless disagreement"; that the testimony of Buss, Smith and Weil supported the defendant and contradicted the testimony for the plaintiff in many essential matters; and that he therefore believed the latter testimony. In this connection he plainly says: "The plaintiff and his son made no such impression on the Court that they must be believed rather than Knibb, Buss, Weil and Smith."

In a case where the evidence is so conflicting that the question of credibility is of controlling force, the trial justice, who has the opportunity of hearing and seeing the witnesses, has a distinct advantage over us in determining that question. We are not unmindful of the fact that in the instant case Buss testified by deposition. In the circumstances, we have scrutinized Buss's testimony and find that the trial justice's view of that testimony is reasonable. From our examination of the record before us and reading the rescript as a whole, rather than in fragments as the

plaintiff does in his brief, we cannot say that the trial justice overlooked or misconstrued any material evidence in the case and that his decision is clearly wrong.

The plaintiff finally contends that, even assuming the defendant's version of the facts to be correct, the plaintiff is entitled to recover a 5% commission as a matter of law, because it is "admitted" that nothing was said to Baxter at the airport meeting about Buss agreeing to pay Knibb 2c a yard for Baxter's commission and that Baxter was completely silent. From this premise he argues that Baxter's silence did not operate in law as an assent to accept 2c a yard as plaintiff's commission on the order in question.

We find no merit in this contention. In this instance the plaintiff falls into the error of restricting his consideration of the evidence to the airport meeting, and of accepting Baxter's testimony concerning that meeting as uncontradicted. In fact he goes far beyond what a fair reading of such evidence reasonably permits when he says that it is "admitted" that nothing was said to Baxter about Buss's final arrangement with Knibb as to the plaintiff's commission. Not only is there no such admission by defendant's counsel or in the evidence, either directly or by way of reasonable inference, but there is also clear testimony which shows that the commission of 2c a yard on the Ward Company's order was fixed by Buss and Knibb in Baxter's presence and hearing; and, further, that he also then and there was informed specifically of that fact, according to the testimony of Smith.

When all this testimony, which the trial justice believed, is considered in the light of Knibb's testimony that at the first and only other meeting between Knibb and Buss the former told the latter, in Baxter's presence and hearing, that defendant's price of $1.07½ a yard was "net to the mill" and that Buss would have to arrange for Baxter's commission, which latter testimony the trial justice also believed, Baxter's silence at the airport meeting is reasonably open to the inference that he "acquiesced in and im-

pliedly assented" to accept a commission of 2c a yard on the order in question, as found by the trial justice, particularly since the circumstances fairly indicate that Baxter then knew he could not get any commission on such order except what Knibb could get from Buss in the price for the goods. On such view of the evidence, it is reasonable to expect that, in the course of fair dealing, Baxter would naturally have made some statement indicating that he disagreed and did not intend to be bound by the commission as fixed by Buss and Knibb at the airport meeting.

Plaintiff's further contention that in any event he was entitled to a commission of 5% under the common counts in his declaration, as such commission was ordinarily paid to selling agents in the textile trade irrespective of a special contract, is without merit in the circumstances of this case. The finding of the trial justice that Baxter agreed to accept a commission of 2c a yard on the Ward Company's order, which is fairly supported by the evidence, precludes such contention.

Plaintiff's exceptions one, two, three and four, which are to the admission in evidence of testimony relating to the territory assigned to the Baruch Wolff Company as defendant's selling agent, are without merit, for it otherwise appears in evidence, without objection from the plaintiff, that the Baruch Wolff Company was defendant's selling agent in New York. All other exceptions of the plaintiff not briefed or argued are deemed to be waived.

All the plaintiff's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the decision.

*Hinckley, Allen, Tillinghast & Wheeler, S. Everett Wilkins, Jr., Isadore Paisner,* for plaintiff.

*Perkins, Higgins & McCabe, Fred B. Perkins,* for defendant.