V. GEORGE RUSTIGIAN RUGS, INC.

v.

RENAISSANCE GALLERY, INC. et al.

No. 2003–625–Appeal.

Supreme Court of Rhode Island.

June 22, 2004.

Joshua Teverow, Providence, for Plaintiff.

Preston W. Halperin, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and SUTTELL, JJ.

## O P I N I O N

PER CURIAM.

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised on appeal should not summarily be decided. The plaintiff, V. George Rustigian Rugs, Inc. (Rustigian or plaintiff), appeals from a Superior Court judgment in favor of the defendants, Renaissance Gallery, Inc. (Renaissance) and Alireza Nowrouzi (Nowrouzi or collectively defendants). Rustigian has sued defendants, alleging that they illegally accumulated additional inventory in contemplation of holding a going-out-of-business sale (GOB sale) in violation of G.L.1956 § 6–14–9. Cause has not been shown, and we proceed to decide the appeal at this time.

This case concerns a GOB sale in the retail carpet business. On July 31, 1997, Oriental Rug Gallery (Oriental), a rug retailer with a twenty-four-year presence in the Providence market and its principal place of business at 736 Hope Street, hired Nowrouzi to manage its retail rug business. Nowrouzi was the sole proprietor and sole shareholder of Renaissance. Under the terms of the management contract, Nowrouzi was to pay Oriental $200,000 to manage Oriental's business from August 15, 1997, through June 10, 1998. A condition precedent to the payment of this money was Oriental's receipt of a GOB license from the City of Providence. Subsequently, Nowrouzi assigned the management contract to Renaissance.

In late August 1997, Oriental, under the management and supervision of Renaissance, conducted large clearance sales in an effort to reduce carpet inventory. These clearance sales were widely advertised throughout Rhode Island. At some point, a decision was made to conduct a GOB sale. On October 9, 1997, pursuant to § 6–14–4, Oriental applied for and was granted a GOB license from the City of Providence. Oriental held a GOB sale from October 25, 1997, through early December 1997. At the conclusion of the GOB sale, Oriental filed for bankruptcy, ceased operating, and was liquidated.

In October 1997, during the GOB sale, Rosalind Rustigian, the president of Rustigian, visited Oriental. She confronted Raymond Barlavi (Barlavi), Oriental's proprietor and her former business partner, and expressed disbelief that Oriental's GOB sale was legitimate. She promised to give Barlavi $100 if Oriental really did go out of business when the sale had

ended, and she left the premises stating "the war is on." Rosalind Rustigian then went to the Attorney General in an attempt to persuade him to investigate the legitimacy of Oriental's GOB sale. She testified that she was concerned about the correctness of the sale because GOB sales in the rug retailing industry tend to saturate a market for months, and an illegitimate GOB sale would put her at a competitive disadvantage. When the Attorney General refused to intervene, Rustigian sued Oriental, alleging that it unlawfully had accumulated additional inventory to prepare for a GOB sale, a violation of § 6–14–9. The plaintiff later amended that complaint, naming Renaissance and Nowrouzi as defendants in place of Oriental. These defendants counterclaimed for defamation, interference with contractual relations, tortious interference with advantageous business relations, and abuse of process.[1]

A nonjury trial was held on June 3 and 4, 2003, before a justice of the Superior Court. Rustigian called Barlavi to testify. He admitted that he and his partner, Ahmad Farhoumand (Farhoumand), hired Nowrouzi to manage the store in 1997. Barlavi said that he was semiretired during 1997 and that Farhoumand primarily was responsible for running the store and negotiating the management agreement with Nowrouzi. Barlavi could not recall whether there were any orders or deliveries of rugs to the store after Nowrouzi took over its management.

Rustigian next called Howard Weaver, director of operations for Greylawn Foods (Greylawn), an east coast shipping firm, who testified about a shipment of rugs his

---

1. The defendants withdrew their allegations of defamation, interference with contractual relations, and tortious interference with advantageous business relations at the conclusion of the presentation of their case. The trial justice ruled in favor of the plaintiff on defendants' abuse of process counterclaim. The only issue before the Court is the trial justice's findings that defendants did not violate G.L.1956 § 6–14–9.

trucking company delivered to Oriental on August 26, 1997. According to Greylawn's business records, a Greylawn driver picked up 221 bales of rugs from four New York wholesalers on August 22, 1997. The shipping manifest indicated that delivery to 736 Hope Street was to occur at 5 a.m. on August 25, 1997, and that the shipment was delivered to 736 Hope Street on August 26, 1997.

Rustigian also presented Elizabeth Dupuis and David Margolis, customers of Oriental, to testify concerning changes in Oriental's inventory. Both individuals testified that they had visited the store before and during the GOB sale and that there were more rugs on display during the GOB sale than during their previous visits. Under cross-examination, both witnesses admitted that they had never been to the basement of Oriental and had no personal knowledge of the number of rugs that might be kept in the store other than in the show room.

Rustigian had excerpts of Nowrouzi's deposition testimony read into the record. Nowrouzi testified that he was "pretty sure" that he had never brought any of his own rugs into Oriental. He also initially stated that he did not believe any new inventory was brought to the store after August 15, 1997, but later conceded that the Greylawn invoices shown to him appeared to indicate that a truckload of rugs was delivered to Oriental on August 26, 1997. Nevertheless, Nowrouzi maintained that he was not involved in the delivery of this shipment of rugs.

After plaintiff rested, defendants moved for judgment as a matter of law pursuant to Rule 52(c) of the Superior Court Rules of Civil Procedure with respect to plaintiff's claim of a violation of § 6-14-9. The defendants argued that plaintiff had not presented any evidence that either Renaissance or Nowrouzi had ordered goods in

contemplation of a GOB sale. The trial justice reserved ruling on the motion.

The defendants presented evidence through the deposition of Farhoumand, a former co-owner of Oriental who resides out of state and who the Superior Court found was unavailable to testify. Farhoumand's testimony established that between January 1, 1997, and April 30, 1997, he added substantial inventory to Oriental based on predictions that it would be a good year for the sale of oriental rugs. Farhoumand testified that he also decided that substantial inventory was needed for a clearance sale Oriental planned to hold from August to September 1997. Farhoumand engaged Nowrouzi to manage the store when Oriental's business did poorly in the first half of 1997. At the time Nowrouzi signed the management contract, Farhoumand envisioned the possibility of a GOB sale, but said that his goal was to conduct a clearance sale and lower Oriental's inventory. He conceded, however, that a GOB sale was a planned option if the clearance sale was not successful. He also testified that he was unaware of any truck deliveries of rugs after April 1997.

On August 27, 2003, the trial justice issued a written decision in this case. Although purportedly decided as a judgment as a matter of law, the decision contained extensive findings of fact and conclusions of law, as well as credibility determinations. Specifically, the trial justice found that Weaver's testimony about the Greylawn delivery of 221 bales of rugs to Oriental in August 1997 was irrelevant because he had no direct knowledge of when the shipment order had been placed. The trial justice also discredited the testimony of plaintiff's witnesses Dupuis and Margolis, finding that they had no personal knowledge of the amount of inventory in the store and that their testimony was speculative. To the contrary, the court found

both Barlavi's and Farhoumand's testimony compelling, establishing that Barlavi did not purchase the subject inventory in contemplation of going out of business.

Based on the above findings, the trial justice found that Rustigian had failed to sustain its burden of proof that defendants had violated § 6–14–9. The trial justice held that the fact that additional rugs may have been purchased forty-five days before the GOB sale did not give rise to a presumption that those rugs were purchased in contemplation of the GOB sale. Indeed, the trial justice found that those purchases, in fact, were not intended for a GOB sale. The trial justice also said that even if defendants had purchased additional inventory in contemplation of a GOB sale, plaintiff's claim would fail because that inventory was not purchased within thirty days of Oriental's application for the GOB license. The trial justice entered judgment in favor of defendants in accordance with her decision and awarded defendants costs. The plaintiff timely appealed.

On appeal, plaintiff argues that the trial justice misconstrued the GOB statute. The plaintiff notes that the trial justice erroneously quoted portions of § 6–14–9 in her decision, and contends that this error demonstrates her failure to consider whether the rugs were nonetheless ordered in contemplation of a GOB sale in violation of § 6–14–9.[2] Specifically, plaintiff notes that although goods delivered within thirty days of a GOB sale are presumed by the statute to be in contemplation of a GOB sale, goods ordered outside of this time frame still can serve as evidence that they were intended for a GOB sale. According to plaintiff, the substantial delivery of rugs in August 1997, and Nowrouzi's management agreement which conditioned payment of $200,000 on Oriental's securing a GOB sale license prove that the August delivery was intended to unlawfully supplement Oriental's inventory. Accordingly, plaintiff contends that the trial justice did not decide the motion for judgment as a matter of law in the light most favorable to the plaintiff because if she had, reasonable inferences should have led the trial justice to conclude that the August delivery was made in contemplation of the GOB sale. We disagree with this contention.

Although the trial justice's decision ostensibly was in response to defendant's Rule 52(c) motion for judgment as a matter of law on the ground that plaintiff had failed to prove a violation of § 6–14–9, the trial justice carefully weighed the evidence, assessed the credibility of the witnesses, and made extensive findings of fact and conclusions of law. Moreover, her decision disposed of all pending issues in the case, not merely the plaintiff's allegation that defendants violated § 6–14–9.

---

2. Section 6–14–9, entitled "Additions to stock in contemplation of sale," reads in its entirety as follows:

"No person, in contemplation of conducting a 'closing out sale,' 'going out of business sale,' 'discontinuance of business sale,' 'selling out,' 'liquidation,' 'lost our lease,' 'must vacate,' 'forced out,' 'removal,' or a sale of other designation of like meaning, or a sale of goods, wares, and merchandise damaged by fire, smoke, water, or otherwise, under a license as provided for in §§ 6–14–3—6–14–6 shall order any goods, wares, or merchandise *for the purpose of selling and disposing of the goods, wares, or merchandise* at the sale, and any unusual purchase and additions to the stock of the goods, wares, and merchandise within thirty (30) days prior to the filing of the application for license to conduct the sale mentioned in § 6–14–3 shall be presumptive evidence that the purchases and additions to stock were made in contemplation of the sale and for the purpose of selling the purchases and additions to stock at the sale." (Emphasis added.)

The trial justice omitted the underscored portion of the statute in her written decision.

Therefore, we shall treat this decision and judgment as a final determination on the merits in accordance with Rule 52(a), not a judgment as a matter of law on partial findings.

 " 'A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong.' " *360 Thames Street Condominium Association v. Landing Development Co.*, 838 A.2d 874, 877 (R.I. 2003). We treat the findings of a trial justice sitting without a jury with great deference. *Jalex Builders, Inc. v. Monaghan*, 840 A.2d 1142, 1144 (R.I.2004) (per curiam). "We will not disturb a trial justice's findings of fact and credibility determinations unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong." *Zaino v. Zaino*, 818 A.2d 630, 638 (R.I.2003). A trial justice's analysis of the evidence and findings in the bench trial context need not be exhaustive, "if the decision reasonably indicates that [she] exercised [her] independent judgment in passing on the weight of the testimony and the credibility of the witnesses it will not be disturbed on appeal unless it is clearly wrong or otherwise incorrect as a matter of law." *Connor v. Sullivan*, 826 A.2d 953, 960 (R.I.2003) (per curiam); (quoting *In re Paul M.*, 626 A.2d 694, 695 (R.I.1993) (per curiam)); *Pillar Property Management, L.L.C. v. Caste's, Inc.*, 714 A.2d 619, 620 (R.I.1998) (mem.).

 We agree with plaintiff's argument that the trial justice misinterpreted § 6–14–9. That statute prohibits a seller from ordering any goods, wares or merchandise for the purpose of selling that inventory at a GOB sale. That statute also establishes a *presumption* that goods ordered within thirty days of an application for GOB sale license are intended to unlawfully supplement the merchant's inventory, thereby increasing profits to the competitive disadvantage of other retailers. The trial justice, however, appears to have turned this statutory presumption into a safe harbor, stating at one point in her decision that "even if Rustigian had been able to prove that the defendants had purchased the inventory in contemplation of the going out of business sale * * * its claim must fail because it alleges that the inventory was purchased well before the thirty (30) day limit set forth in § 6–14–9." This is an erroneous conclusion of law. The statute prohibits *any* accumulation of inventory in contemplation of a GOB sale, not just inventory that is accumulated within thirty days of the application for a GOB sale license.

 Although we are satisfied that the trial justice erred with respect to the application of § 6–14–9, we are of the opinion that this error was harmless. The trial justice found that the plaintiff "failed to establish that the defendants purchased the inventory in contemplation of a going out of business sale," which is the basic determination that § 6–14–9 requires. This ultimate ruling was amply supported by the trial justice's substantial findings and credibility determinations. She found Weaver's testimony concerning the August 1997 shipment of rugs to be irrelevant because there was no evidence offered concerning when those rugs were ordered. Moreover, none of the plaintiff's other witnesses had any personal knowledge of the state of Oriental's inventory leading up to or during the GOB sale. On the other hand, the trial justice believed Farhoumand's testimony that Oriental did not purchase inventory in contemplation of a GOB sale but rather for the purpose of holding a clearance sale.

The plaintiff has not demonstrated that the trial justice misconceived or overlooked any material evidence, or that she

was otherwise clearly wrong. The findings of the trial justice are amply supported by the evidence, and her conclusion that the plaintiff failed to prove a violation of § 6–14–9 is upheld. The judgment of the Superior Court is affirmed. The papers of the case are remanded to the Superior Court.

Justice FLAHERTY did not participate.