**John F. McBURNEY**

v.

**Joseph J. ROSZKOWSKI.**

**No. 1999–496–Appeal.**

Supreme Court of Rhode Island.

June 15, 2005.

parties must not participate in unilateral communications with arbitrators.

John F. McBurney, for Petitioner.

John T. Walsh, Jr., Providence, for Respondent.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

In this dispute between two attorneys, the plaintiff, John F. McBurney, Esq. (McBurney), appeals from a Superior Court judgment denying his motion for relief under Rule 60(b) of the Superior Court Rules of Civil Procedure. This case was consolidated for oral argument with *McBurney v. Teixeira*, 875 A.2d 439 (R.I. 2005) pursuant to an order directing all parties to appear and show cause why the issues in the respective appeals should not summarily be decided. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons stated below, we deny McBurney's appeal and affirm the Superior Court judgment.

## Facts and Background

This case is but another chapter in an ongoing saga among a number of parties, all stemming from the legal representation of Shirley Salerno Bergeron (Bergeron) in the late 1980s and into 1990. We hope that this appeal will indeed be the final act of what has become a sad and sordid affair. The records of this matter and of its companion case, *McBurney v. Teixeira*, which we decide contemporaneously with this appeal, establish the following pertinent facts and history.

On June 25, 1987, Bergeron was involved in an automobile accident in which she sustained personal injuries. As a result, she retained the legal services of McBurney, a veteran attorney in the State of Rhode Island, and the two entered into a contingency fee agreement. Around the same time, attorney Joseph J. Roszkowski (Roszkowski), also a seasoned member of the Rhode Island bar, was appointed to represent Bergeron as an indigent defendant in a wholly unrelated criminal matter then pending in the United States District Court for the District of Rhode Island.

While Roszkowski was acting as Bergeron's counsel in that criminal matter, McBurney claimed that he made a number of false representations to Bergeron regarding the manner in which McBurney was handling her personal injury case. This, according to McBurney, prompted Bergeron to reject a proposed settlement offer, discharge McBurney as her attorney in the personal injury matter, and hire Roszkowski to handle the case. Angered, McBurney sued Bergeron on June 12, 1989, demanding compensation for unpaid legal services.

In June 1994, nearly five years after initiating suit against his former client, McBurney brought suit directly against Roszkowski. In that complaint, McBurney alleged that Roszkowski had tortiously in-

terfered with his contractual relationship with Bergeron by advising her to reject the settlement offer that McBurney had obtained in her personal injury case. In addition, McBurney alleged that Roszkowski had directed Bergeron to file a false and defamatory complaint against him with the Disciplinary Counsel of the Rhode Island Supreme Court.[1]

McBurney's case against Roszkowski was reached for trial on March 20, 1999. After only a day and a half of trial, however, Roszkowski and McBurney agreed to settle. On March 29, 1999, the parties executed a stipulation providing "Judgment for Defendant." Soon thereafter, the parties executed a "General Release and Confidentiality Agreement." The terms of the settlement provided as follows:

"KNOW ALL MEN THAT JOHN F. McBURNEY, JR., and MCBURNEY LAW SERVICES, INC., a professional corporation (hereinafter 'Releasors'), in consideration of the sum of * * *, to them paid by ATTORNEY JOSEPH J. ROSZKOWSKI, and ZIMMERMAN, ROSZKOWSKI & BRENNER, ATTORNEYS, their heirs, executors, representatives, agents, employees, attorneys, affiliates, associates, insurance carriers, successors and assigns (hereinafter 'Releasees'), the receipt whereof is hereby acknowledged, do hereby remise, release and forever quitclaim unto said Releasees, (and to any and all other persons, firms, or corporations, their employees, agents, servants, representatives, officers, directors, successors and assigns, whether now known or unknown who are, or may in the future be determined to be liable to Releasors, for and on account of the matters and occurrences hereinafter set forth), any and all manner of actions, causes of action, debts, dues, claims and demands, both in law and in equity, more especially, without limiting the generality of the foregoing, any claim of any nature whatsoever, whether known or unknown, anticipated or unanticipated, arising out of any cause of action which was brought or could have been brought in connection with that action pending in Providence County Superior Court, * * * entitled: *John F. McBurney v. Joseph J. Roszkowski.*"[2]

McBurney maintains that shortly after settling the case, however, he was surprised to learn that the settlement stipulation had specified judgment for defendant rather than the more customary dismissal with prejudice. As a result, McBurney filed a "motion to correct the record" under Rule 60(b), asserting that he had neither consented to nor given his attorney the authority to enter into a stipulation specifying "Judgment for Defendant." Af-

---

**1.** McBurney's suit against Roszkowski initially was dismissed by a justice of the Superior Court on the grounds that the complaint was time-barred by the applicable three-year statute of limitations contained in G.L.1956 § 9–1–14(b) governing tort actions. On appeal, however, we reversed, holding that the ten-year period set forth in § 9–1–13(a) applied to McBurney's claim for intentional interference with a contractual relationship. *McBurney v. Roszkowski,* 687 A.2d 447, 449 (R.I.1997).

**2.** Ironically, the record reflects that some time prior to the settlement of McBurney's direct action against Roszkowski, he and Ber-

geron reunited to file a legal malpractice claim on Bergeron's behalf against Roszkowski and Armand A. Teixeira. In that claim, Bergeron alleged numerous shortcomings in Roszkowski and Teixeira's handling of her personal injury suit. On September 23, 2002, a justice of the Superior Court dismissed Bergeron's claim with prejudice under Rule 41(b) of the Superior Court Rules of Civil Procedure because of her failure to prosecute her cause of action. Bergeron appealed, and we affirmed the judgment dismissing her claim. *Bergeron v. Roszkowski,* 866 A.2d 1230, 1237 (R.I.2005).

ter a hearing, a justice of the Superior Court denied the motion, and McBurney appealed to this Court.

While the appeal was pending, this dispute took another serpentine twist when McBurney, on March 22, 2000, commenced another separate cause of action against attorney Armand A. Teixeira. In his complaint, McBurney alleged that Teixeira, while working as an associate of Joseph Roszkowski at the Woonsocket law firm of Zimmerman, Roszkowski & Brenner, also had interfered in McBurney's contractual relationship with Bergeron. McBurney claimed that he and Bergeron had reconciled in March 1990, and that she had rehired him around that same time. According to the complaint, Teixeira, on or about April 6, 1990, informed Bergeron that McBurney had lied to her about the very existence of a proposed settlement in her personal injury case, causing the client to fire McBurney for a second time.

Teixeira soon moved for summary judgment. To support his motion, Teixeira first maintained that McBurney was prohibited from asserting a claim against him by the general release and confidentiality agreement, which applied to not only Roszkowski, but his entire firm, including its employees and associates. Secondly, Teixeira argued that McBurney's suit was indistinguishable from and arose out of the same misconduct alleged in the original complaint against Roszkowski. Thus,

Teixeira claimed, McBurney's suit was barred by the applicable ten-year statute of limitations.

In response to Teixeria's motion, McBurney asserted that he had never signed a portion of the general release and confidentiality agreement. He contended that although he had signed the release in his individual capacity, he had not signed the document in the capacity of a corporate officer for McBurney Law Services, as the document purported. Thus, McBurney argued, his signature was either forged or spliced onto the release agreement from another source.[3]

We originally heard oral argument in this matter on January 23, 2001. However, because McBurney's allegations of fraud and forgery had not yet been heard before a trier of fact, we refrained from making a decision at that time. Instead, we remanded the case to the Superior Court for the following findings of fact:

"(1) whether McBurney's attorney had actual or implied authority to enter into the stipulation, dated March 23, 1999, providing for the type of judgment entered; and (2) whether, on a document entitled 'General Release and Confidentiality Agreement,' the signatures purporting to be those of McBurney individually, and on behalf of McBurney Law Services, Inc., are genuine."[4]

---

**3.** Noting that the validity of the general release and confidentiality agreement was an issue on appeal at the time of the hearing of defendant's motion, the trial justice in *Teixeira* granted summary judgment in favor of the defendant solely on the ground that McBurney's suit was time-barred.

**4.** By the time we remanded this case, however, McBurney already had filed a separate appeal from the trial justice's granting of summary judgment in favor of Teixeira. In light of the commonality of issues raised in the two matters, namely, the validity of the

general release and confidentiality agreement, we remanded McBurney's respective appeals to the Superior Court together. Although the trial justice in the *Teixeira* matter had not relied on the content of the release in granting Teixeira's motion for summary judgment, we deemed that it would be helpful to this Court's review and in the interest of judicial economy to remand both cases together to the Superior Court for a final determination regarding the validity of the stipulation and release agreement.

On remand, the Superior Court[5] conducted five full days of extensive hearings between June 7 and July 23, 2001, during which both parties presented several witnesses. First, McBurney's attorney, Cristine McBurney,[6] testified that McBurney specifically had agreed to the judgment stipulation providing "Judgment for Defendant." Cristine testified that at no time had she presented a stipulation in any other form to McBurney. The witness also testified that she personally observed McBurney sign the general release and confidentiality agreement.

McBurney, on the other hand, testified that he had never consented to the stipulation providing "Judgment for Defendant." Rather, he testified that on March 23, 1999, he signed a settlement stipulation in the courtroom that contained more commonly-used language providing for a dismissal with prejudice. McBurney also testified that although he had signed the release agreement in his individual capacity, he never had signed as a corporate officer for McBurney Law Services. Because the document contained a signature purporting to be McBurney's in that capacity, he testified, that signature was either forged or spliced onto the document in question.

Kathleen McBurney (Kathleen), an assistant at McBurney Law Services and a member of the family, as well, also testified at the hearing. According to the witness, she received a faxed copy of the general release and confidentiality agreement at the law offices shortly after McBurney had returned from court on March 23, 1999. Kathleen testified that as soon as she received the fax transmission, she gave it to McBurney for his signature. A short while later, McBurney returned the document to her, and she briefly reviewed it. According to Kathleen, the release was "fully executed." She added that when he handed the signed release to her, McBurney instructed her to mail the documents to Roszkowki's attorney.

Next, John Walsh, attorney for Roszkowski, testified that he handwrote a stipulation specifying "Judgment for Defendant," which he and Cristine executed. After signing the stipulation, Walsh testified that he faxed a release to Cristine. That same day, he received, via return fax, the same release, signed by both Cristine and McBurney. Walsh added that it was his understanding throughout this case that Cristine was representing McBurney, and, therefore, she had authority to negotiate on his behalf. Walsh added that he was unaware of the existence of any stipulation other than that which the attorneys signed on March 23, 1999.

Both parties also presented expert witnesses to testify about the authenticity of the signatures on the general release and confidentiality agreement. First, Pauline Patchis, a board-certified document examiner, testified that after examining and comparing the signatures on the release to five known signatures of McBurney, she was of the opinion that the questioned signature on the general release and confidentiality agreement was not genuine. Patchis noted, however, that she had not examined originals of the contested document, instead comparing only copies of the release to known samples of McBurney's writing.

The defendant presented Alan T. Robillard as an expert in questioned document examination. Robillard, an FBI-trained

---

5. On remand, the matter was not heard by the original trial justice, but by a different justice of the Superior Court.

6. John McBurney and Cristine McBurney are father and daughter.

handwriting analyst, testified at length about his training and the methodology utilized in his field, including the highly technical protocol employed by handwriting and document analysts. Robillard testified that he subjected the documents in question to the standard protocol for evaluating questioned handwriting. Unlike Patchis, Robillard conducted his tests and examination on the original document, which, he said, allowed him to analyze the pressure placed on the pen used when the questioned signatures were written. Robillard opined that each of McBurney's signatures on the general release and confidentiality agreement were, in fact, authentic.

On June 10, 2002, the hearing justice rendered findings of fact in accordance with the remand from this Court. He reviewed the evidence and testimony and found that there was no question that McBurney had authorized Cristine to settle with Roszkowski. Thus, in the trial justice's view, Cristine had, at a minimum, the implied authority to execute the judgment stipulation "necessary to effectuate that settlement." Accordingly, the court found "[t]hat Attorney Cristine McBurney, having been duly authorized to settle McBurney's case * * * had actual or implied authority to execute the stipulation for judgment."

The hearing justice also addressed the authenticity of the signatures on the general release and confidentiality agreement. In so doing, the hearing justice accepted Alan T. Robillard's testimony over that of Paula Patchis, noting:

> "In the opinion of this Court, having heard the testimony, having reviewed the extensive exhibits forming part of Mr. Robillard's testimony, having heard the methodologies utilized by him, the scientific investigation by him, and being satisfied that his testimony was far more

credible than that of Pauline Patches [*sic*], * * * the Court finds the testimony of Mr. Robillard to be far, far more convincing."

The hearing justice found "[t]hat the signatures of John McBurney, and John F. McBurney, both for himself and for the corporation [McBurney Law Services, Inc.], were in fact his signatures, and, that Cristine McBurney's signature was in fact her signature." The records in both *Roszkowski* and *Teixeira* were returned to this Court for our consideration of McBurney's respective appeals in both matters.

### Standard of Review

■ At the outset, we first acknowledge that our review of an order denying a motion to vacate a judgment under Rule 60(b) is limited solely to "the correctness of that order and does not raise questions concerning the correctness of the judgment sought to be vacated." 1 Kent, *R.I. Civ. Prac.*, § 60.10 at 457 (1969). Consistent with this principle, this Court previously has recognized that "[m]otions to vacate a judgment are addressed to the sound discretion of the trial justice, and his or her ruling will not be disturbed on appeal absent a showing of abuse of discretion." *Medeiros v. Anthem Casualty Insurance Group*, 822 A.2d 175, 178 (R.I. 2003) (quoting *Gray v. Stillman White Co.*, 522 A.2d 737, 741 (R.I.1987)).

■ In this case, however, our assessment of whether the trial justice abused his discretion in denying McBurney's Rule 60(b) motion is dependent on the validity of the Superior Court's factual findings regarding: (1) the authority of McBurney's counsel to enter into the judgment stipulation specifying "Judgment for Defendant;" and (2) the authenticity of McBurney's signatures on the general release and confidentiality agreement. When reviewing findings of fact by a trial

justice sitting without a jury, we apply a similarly deferential standard of review. *McEntee v. Davis*, 861 A.2d 459, 462 (R.I. 2004). "This Court will not disturb the findings of a trial justice sitting without a jury in a civil matter 'unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" *Id.* (quoting *Paradis v. Heritage Loan and Investment Co.*, 701 A.2d 812, 813 (R.I.1997) (mem.)). *See also Gross v. Glazier*, 495 A.2d 672, 673 (R.I.1985); *Lisi v. Marra*, 424 A.2d 1052, 1055 (R.I.1981). In addition, we have recognized that "[a] trial justice's analysis of the evidence and findings in the bench trial context need not be exhaustive, [and] 'if the decision reasonably indicates that [he] exercised [his] independent judgment in passing on the weight of the testimony and the credibility of the witnesses it will not be disturbed on appeal unless it is clearly wrong or otherwise incorrect as a matter of law.'" *V. George Rustigian Rugs, Inc. v. Renaissance Gallery, Inc.*, 853 A.2d 1220, 1225 (R.I.2004) (quoting *Connor v. Sullivan*, 826 A.2d 953, 960 (R.I.2003)). Furthermore, mixed questions of law and fact, as well as inferences and conclusions drawn from the testimony and evidence presented at trial, are entitled to the same deference. *Wickes Asset Management, Inc. v. Dupuis*, 679 A.2d 314, 317 (R.I.1996).

McBurney's appeal obliges this Court to apply a two-tiered standard of review. First, we must determine whether the findings of fact rendered by the trial justice on remand indicate a misconception or oversight of the material evidence presented to the Superior Court, or whether those findings arise from an incorrect assessment of the law. Then, on the basis of the entire record, we must determine if the denial of McBurney's Rule 60(b) motion should be affirmed.

## Analysis and Discussion

### Authority to Enter Judgment Stipulation

Does the record support a finding that Cristine, as attorney for McBurney, had authority to enter into the stipulation dated March 23, 1999? On this question, McBurney first argues that Cristine's testimony on remand was not credible, and that the trial justice disregarded crucial evidence in his assessment of the witness. In the alternative, McBurney argues that the hearing justice's conclusion that Cristine possessed the authority to settle his claim was incorrect as a matter of law. We disagree with both contentions and will address each separately.

First, we see no indication that the trial justice misconceived or erred in his evaluation of the evidence presented to the court. This Court long has recognized the principle that assigning credibility to witnesses presented at trial is the function of the trial justice, who has the advantage of seeing and hearing the witnesses testify in court. *Baxter v. Lincoln Mills Co.*, 70 R.I. 16, 24, 36 A.2d 106, 109 (1944); *Rahikka v. Gronstrom*, 61 R.I. 270, 274, 200 A. 973, 975 (1938). Also, it is within the province of the trial justice, as part of the fact-finding process, to draw inferences from the testimony of witnesses, and those inferences, if reasonable, are entitled on review to the same weight as his factual determinations. *Veach v. Veach*, 463 A.2d 508, 510 (R.I.1983). Our review of the record in this case reveals that Cristine testified that she was specifically and expressly authorized to settle McBurney's claim and enter into a judgment stipulation. In addition, Walsh testified that he was, at all times pertinent to this issue, under the impression that Cristine was representing McBurney and had the au-

thority to negotiate on his behalf. Even McBurney's own testimony indicated that he specifically instructed his attorney to settle his lawsuit against Roszkowski. Considering our deferential standard of review, and in light of this testimony, we see no indication that the trial justice's conclusion that Cristine was authorized to enter into the judgment stipulation reflects a misconception or oversight of the material evidence presented to him. Indeed, the trial justice's factual conclusion is wholly supported by the testimony presented on remand.

■■■■ Likewise, we hold that McBurney has failed to show that the trial justice committed an error of law when he concluded that Cristine had the authority to enter into the specific settlement stipulation at issue in this case. We have recognized that "[t]he relationship [between an attorney and client] is essentially one of principal and agent." *State v. Cline*, 122 R.I. 297, 309, 405 A.2d 1192, 1199 (1979). For that reason, the determination of whether an attorney possesses the authority to bind his client requires an application of the principles governing agency law. Normally, an agent is considered to be vested with authority "to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him." Restatement (Second) *Agency*, § 7 (1958). "An agent is

authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts." *Id.* at § 33. "Unless otherwise agreed, authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it." *Id.* at § 35.

■■■■ Specifically addressing the authority of an attorney to settle a claim or lawsuit on behalf of his or her client, however, this Court has recognized that "the power to settle lawsuits rests not with the attorneys but with the clients who are parties to the suit[.]" *Parrillo v. Chalk*, 681 A.2d 916, 919 (R.I.1996). Thus, we adhere to the rule that "an attorney has no authority to settle a case on behalf of a client *unless the client has authorized the attorney to do so.*" *Id.* (Emphasis added.) [7] In those specific circumstances when a client expressly authorizes his or her attorney to settle a case, however, it is implied that the attorney is further "authorized to take such steps in representing his client as he may deem legal, proper and necessary, and his acts in that respect, in the absence of fraud, must be regarded as the acts of his client." *Cohen v. Goldman*, 85 R.I. 434, 438, 132 A.2d 414, 416 (1957).[8]

---

7. *See Bolander v. City of Green City*, 35 S.W.3d 432, 440 (Mo.Ct.App.2000); *New England Educational Training Service, Inc. v. Silver Street Partnership*, 148 Vt. 99, 528 A.2d 1117, 1120 (1987).

8. Generally, implied authority of an agent may be characterized as "actual authority, circumstantially proven, which the principal is deemed to have actually intended the agent to possess." 3 Am.Jur.2d *Agency* § 75 at 578 (1986). "Implied authority embraces authority to do whatever acts * * * are necessary, usual, and proper to accomplish or perform,

the main authority expressly delegated to the agent." *Id.* at 579. *See also* 7A C.J.S. *Attorney & Client* § 233 at 224 (2004) ("[i]n addition [to express authority], the attorney has, merely by virtue of the retainer or employment alone, the general implied authority to do on behalf of the client all acts, in or out of court, necessary or incidental to the prosecution or management of the suit or defense, or the accomplishment of the purpose for which he or she was retained, and any representations which an attorney makes within the scope of his authority may be binding on the

■ Applying these principles to the facts of this case, it is apparent to this Court that the trial justice did not err in his assessment of the law when he found that Cristine was authorized to sign the settlement stipulation providing "Judgment for Defendant." The testimony elicited on remand established that Cristine was expressly authorized to settle the lawsuit against Roszkowski. It is clear that in the absence of any evidence that McBurney specifically advised his attorney *not* to enter into the stipulation providing "Judgment for Defendant," Cristine had, at a minimum, the implied authority to enter into the judgment stipulation necessary to carry into effect the main authority conferred, *viz.*, to settle the case. Accordingly, we see no error in the trial justice's conclusion that Cristine was vested with the authority to enter into the judgment stipulation.

### The Validity of the Signatures on the General Release and Confidentiality Agreement

■ We now turn to McBurney's arguments about the validity of the signatures on the general release and confidentiality agreement. McBurney contends that the settlement agreement should be vacated because the signatures on those documents were either forged or spliced onto the papers in question. In accordance with our remand, the hearing justice found that the signatures on each of the documents were, in fact, McBurney's.

That finding was based largely upon the expert testimony of Alan T. Robillard, who performed a methodical and highly technical analysis of McBurney's handwriting sample. The trial justice determined that Robillard's testimony regarding the signatures on the documents in question was inherently more reliable than that offered by McBurney's expert, Pauline Patchis, whose methods of examination were less impressive to the hearing justice. Rejecting her testimony, the hearing justice concluded, "Patches [*sic*] * * * essentially, among other things, testified almost to the effect that what she does is look at the signatures and note various things[.] * * * [A]lmost anybody could do the same thing[.]"

The Court has recognized that "[i]t is the duty of the triers of fact to examine and consider the testimony of every witness regardless of his qualifications, and to grant to particular testimony only such weight as the evidence considered as a whole and the proper inferences therefrom reasonably warrant." *Kyle v. Pawtucket Redevelopment Agency*, 106 R.I. 670, 673, 262 A.2d 636, 638 (1970). Moreover, "[t]his process of evaluating the witnesses and their testimony applies whether a case is tried to a jury or to a judge sitting without a jury[.]" *Id.* Moreover, we specifically have held that "[j]ust as a trial justice may pick and choose among evidence presented by laypersons, he or she may do the same when dealing with evidence of experts." *Harvard Pilgrim Health Care of New England, Inc. v. Gelati*, 865 A.2d 1028, 1035 (R.I.2004) (quoting *Ferland Corp. v. Bouchard*, 626 A.2d 210, 216 (R.I.1993)).

Here, the hearing justice articulated a clear basis for his decision to rely on Robillard's testimony and to reject that of Patchis. We are of the opinion that to do so was well within the hearing justice's discretion. Thus, our only concern is to determine whether the trial justice overlooked or misconceived material evidence or was otherwise wrong. Nothing has been presented to us to indicate that the hearing justice erred in such manner. Ac-

client"). *See also* 2 *Fletcher Cyclopedia of the* *Law of Private Corporations,* § 438 (1998).

cordingly, we decline to accept an invitation to second-guess his finding that McBurney's signatures on the general release and confidentiality agreement were authentic.

## Motion to Vacate under Rule 60(b)

In light of the findings of fact made by the Superior Court on remand, we are of the opinion that the trial justice's denial of McBurney's Rule 60(b)[9] motion to vacate did not constitute an abuse of discretion. In reviewing a Rule 60(b) motion after a consent judgment has been entered, this Court specifically has held that "[the judgment] cannot 'be opened, changed, or set aside without the assent of the parties in the absence of fraud, mutual mistake or actual absence of consent * * *.'" *DeFusco v. Giorgio*, 440 A.2d 727, 729 (R.I.1982) (quoting *Douglas Construction and Supply Corp. v. Wholesale Center of North Main St., Inc.*, 119 R.I. 449, 452, 379 A.2d 917, 918 (1977)). It is the burden of the moving party to convince the trial justice that legally sufficient grounds exist to warrant the vacation of judgment under Rule 60(b). *See Defusco*, 440 A.2d at 730.

On remand, McBurney was provided a full and fair opportunity to present evidence that he neither consented to the judgment stipulation nor signed the release documents. We see no error in the findings on these two specific questions. Thus, we hold that the trial justice's denial

of McBurney's Rule 60(b) motion did not constitute an abuse of discretion.

## Conclusion

For the foregoing reasons, we affirm the Superior Court judgment and remand the record in this case to that court.

---

9. Rule 60(b) of the Superior Court Rules of Civil Procedure provides, in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud * * *, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."